**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

ALEXIS BURROUGHS, *et al.*,

        *Plaintiffs*,

    v.

KRISTI NOEM,

        *Defendant.*

No. 23-cv-3271 (DLF)

---

<u>**MEMORANDUM OPINION**</u>

Plaintiffs Alexis Burroughs and Janet Miller bring this action against the Department of Homeland Security (the "Department") alleging Title VII discrimination and harassment on the basis of race (African American) and sex (female) and retaliation. *See* 42 U.S.C. § 2000e *et seq.* Before the Court is the Motion to Dismiss and Motion for Summary Judgment, Dkts. 9, 10. For the reasons that follow, the Court will grant in part the motion to dismiss and transfer the case to the District of Maryland.

I.    **BACKGROUND**

Alexis Burroughs and Janet Miller are African American female employees of U.S. Citizenship and Immigration Services (the "Agency"). Compl. ¶¶ 2–3, 12, 15, Dkt. 1. When the plaintiffs started working for the Agency, it was headquartered in the District of Columbia. *Id.* ¶ 7. At the end of 2020, the Agency headquarters moved to Maryland. *Id.* From around 2016 onward, Burroughs and Miller worked together on the System for Tracking Activities, Relationships, and Services program. *Id.* ¶¶ 18–19. In that role, they oversaw federal contractors who developed various applications across numerous offices. *Id.* The plaintiffs allege that from December 2018 to sometime in 2021, management denied their requests for additional staffing,

despite granting requests for their white peers.  *Id.* ¶ 21.  These denials resulted in plaintiffs being forced to work long overtime hours, which were uncompensated because management discouraged them from requesting compensatory time.  *Id.* ¶¶ 21, 24.  When the plaintiffs raised these issues with supervisors, they were "maligned" and "harassed."  *Id.* ¶¶ 22–23.  In 2018, Miller received a performance rating that was lower than the previous year.  *Id.* ¶ 28.

   In February 2018, the Department initiated a bonus program to encourage employee retention.  *Id.* ¶ 25.  The plaintiffs did not receive the bonus until 2019, despite being eligible earlier.  *Id.* ¶ 25–26.  They were also required to submit justifications to establish their eligibility.  *Id* ¶ 26.  As alleged, they—the only two African American employees in the group—were the only employees that had to do so.  *Id.*

   The plaintiffs further allege that they were unknowingly subjected to scrutiny and oversight from a coworker from June 2020 until February 2021.  *Id.* ¶ 29.  In addition, that coworker was noncompetitively selected to serve as Acting Branch Chief, despite the plaintiffs having more experience.  *Id.* ¶ 32.  When Burroughs complained to supervisors, she was "degrad[ed] and stereotyp[ed]" as a black woman and had her complaints dismissed as "feelings."  *Id.* ¶¶ 34–35.  Later, the Acting Branch Chief sent the plaintiffs a message that included an emoji of a monkey making a snow angel.  *Id.* ¶ 36.

   After a meeting in January 2021 where plaintiffs discovered that the Acting Branch Supervisor had been assigned to their team to assess them, the plaintiffs initiated EEO contact.  *Id.* ¶ 39.  The plaintiffs allege that they continued to be harassed and treated dismissively after EEO contact.  *Id.* ¶ 42–44.  In addition, the plaintiffs were again passed up for a promotion.  *Id.* ¶ 45.

   Upon receiving final agency decisions denying their claims, the plaintiffs filed this action alleging discrimination, harassment, and retaliation.  *Id.* ¶¶ 9–10.

## II.     LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When deciding a Rule 12(b)(6) motion, the court may consider only the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials.  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  As relevant here, a court may consider plaintiffs' EEO documents for assessing exhaustion and timeliness attacks, particularly when—as is true in this case—neither side disputes their authenticity.  *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (considering "the pleadings and undisputed documents in the record" while reaching the merits on a motion to dismiss); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 10–11 (D.D.C. 2016) (taking judicial notice of informal and formal administrative complaints on a motion to dismiss).

Under Rule 12(b)(3), a party may move to dismiss an action or claim when venue is improper.  Fed. R. Civ. P. 12(b)(3).  Similarly, the federal venue statute, 28 U.S.C. § 1406(a), requires a court to "dismiss, or if it be in the interest of justice, transfer" a case that has been filed "in the wrong division or district."  28 U.S.C. § 1406(a).  On a Rule 12(b)(3) motion, the moving party "must provide sufficient specificity to put the plaintiff on notice" of the potential defect, but "the burden remains on the plaintiff to establish that venue is proper."  *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 50–51 (D.D.C. 2014) (internal quotation marks omitted), *aff'd sub nom. McCain v. Bank of Am. N.A.*, 602 F. App'x 836 (D.C. Cir. 2015).  Venue determinations are driven by "commonsense appraisal[s]" of the "events having operative significance in the case."  *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978).  "[V]enue must be established as to each separate cause of action."  *Beattie v. United States*, 756 F.2d 91, 100 (D.C. Cir. 1984), *abrogated on other*

*grounds by Smith v. United States*, 507 U.S. 197 (1993); *see also Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993) (transferring venue when the sole count sustaining venue was dismissed).

"To prevail on a motion to dismiss for improper venue, the defendant must present facts that will defeat the plaintiff's assertion of venue." *James v. Verizon Services Corp.*, 639 F. Supp. 2d 9, 11 (D.D.C. 2009). When ruling on a Rule 12(b)(3) motion, "the [C]ourt accepts the plaintiff's well-pled factual allegations regarding venue as true, draw[ing] all reasonable inferences from those allegations in the plaintiff's favor." *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (internal quotation marks omitted). "The Court need not, however, accept the plaintiff's legal conclusions as true, and may consider material outside of the pleadings." *Abraham v. Burwell*, 110 F. Supp. 3d 25, 28 (D.D.C. 2015) (internal citation omitted). Unless there is a pertinent factual dispute to resolve, a challenge to venue presents a pure question of law. *Williams v. GEICO*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011).

## III.    ANALYSIS

The Court will grant the defendant's motion to dismiss as to certain claims of disparate treatment because the plaintiffs failed to exhaust those claims in a timely fashion. The Court will transfer the remaining claims to the District of Maryland because the District of Columbia is an improper venue for most of the remaining claims.

### A.    Exhaustion

A federal employee bringing claims under Title VII must timely exhaust administrative remedies before filing suit in federal district court. *See Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012); *see also* 29 U.S.C. § 794a(a)(1). The exhaustion requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for

prompt adjudication and decision." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (cleaned up).  Although this requirement is not jurisdictional, "a court may not consider a discrimination claim that has not been exhausted in this manner absent a basis for equitable tolling." *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008).

As relevant here, to exhaust administrative remedies for Title VII claims, complainants "must consult a[n] [Equal Employment Opportunity (EEO)] Counselor prior to filing a complaint." 29 C.F.R. § 1614.105(a).  They must do so "within 45 days of the date of the matter alleged to be discriminatory." *Id.* § 1614.105(a)(1).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Construing the facts most favorably to the plaintiffs, Burroughs made her initial EEO contact on February 1, 2021, and Miller on February 4, 2021.  Compl. ¶ 40.  Thus, claims relying on any allegedly discriminatory acts that occurred before December 18, 2020 for Burroughs and December 21, 2020 for Miller are untimely.

The Department points to four discrete discriminatory actions that are untimely: (1) the denial of incentive program bonuses; (2) both plaintiffs' non-selection as Acting Branch Chief; (3) Miller's 2018 performance rating; and (4) their lack of compensatory time.

The plaintiffs argue they are entitled to equitable tolling for the incentive program bonuses denial.  Opp'n at 17–18.  Equitable tolling for Title VII claims should be "exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Secretary of the Army,* 845 F.2d 1051, 1057 (D.C. Cir. 1988).  The plaintiffs bear the burden of pleading and proving equitable reasons exist to toll. *Saltz v. Lehman*, 672 F.2d 207, 209 (D.C. Cir. 1982).  Some courts toll if an employee shows that she could not have had a "reasonable suspicion" about the discriminatory act when it occurred. *See Drielak v. McCarthy*, 209 F. Supp. 3d 230, 238 (D.D.C. 2016); 29 C.F.R. §

1614.105(a)(2).  *But see Lewis v. McDonough*, 703 F. Supp. 3d. 95, 105–08 (D.D.C. 2023) (calling into question the validity of the reasonable suspicion standard).  The plaintiffs are not entitled to equitable tolling because grounds for a reasonable suspicion of discrimination existed in 2019.

The incentive program rollout occurred early in 2018.  Soon after, the plaintiffs were aware that they did not receive the bonuses and made multiple inquiries into their eligibility.  Miller Aff., Ex. 12, at 127, Dkt. 9-2; Burroughs Aff., Ex. 13 at 177–78, Dkt. 9-2.  During those conversations, the plaintiffs learned that white employees received the incentive, including some who did not meet the eligibility criteria.  Miller Aff., Ex. 12 at 127 ("[A white employee] said that he even qualified…despite his group not actually touching anything cyber.").  This information should have given the plaintiffs a reasonable suspicion that their denial was discriminatory.  "Courts in this Circuit have routinely held that an employee reasonably should suspect that there might be discriminatory reasons for his or her non-selection (or non-promotion) upon learning that an individual of a different race (or gender, if applicable) was selected (or promoted)."  *Armstead v. Jewell,* 958 F. Supp. 2d 242, 246 (D.D.C. 2013) (collecting cases); *see also McCants v. Glickman*, 180 F. Supp. 2d 35, 40 (D.D.C. 2001) (denying tolling when plaintiff's own submissions revealed that he should have at least suspected discrimination earlier when he knew only one other black attorney was employed where he was interviewing).

To resist this conclusion, the plaintiffs argue they only learned the denial was discriminatory in 2021 when they were told that they were the only employees who had to submit a justification letter to receive the bonus.  Opp'n at 17.  But the clock begins when a plaintiff suspects or should reasonably suspect discrimination, not when she has obtained the "supportive facts necessary to prosecute a discrimination charge."  *Johnson v. Gonzales,* 479 F. Supp. 2d 55, 59 (D.D.C. 2007) (cleaned up).  Here, as early as 2018, the plaintiffs were aware that white

employees who were arguably less qualified received the incentive that they had been denied, Miller Aff., Ex. 12, at 127; Burroughs Aff., Ex. 13 at 177–78, even though they did not receive confirmation of this fact until January 2021, Opp'n at 17. Because they had "reasonable suspicion" of the discrimination long before they contacted the EEO, *Drielak*, 209 F. Supp. 3d at 239, the plaintiffs are not entitled to equitable tolling on the first allegedly discriminatory action.

Regarding the latter three discrete actions, the plaintiffs do not dispute that claims based on these actions are untimely. Opp'n at 21–22. Instead, they claim those actions "should be considered as to . . . the overall hostile work environment." *Id*. Hostile work environment claims are timely as long as one action falls within the filing period. *Morgan*, 536 U.S. at 122. Those actions therefore may be considered when evaluating the plaintiffs' hostile work environment claim, but not as discrete, actionable bases for disparate treatment claims.

The Department also has not waived the timeliness defense. *See* Opp'n at 15–16. An agency may waive a timeliness defense when it fails to raise the issue "during the administrative process." *Bowden*, 106 F.3d at 439. But unlike in *Bowden*, the Department here raised the timeliness issue before the EEO, reflected in Miller's final agency decision, Ex. 8 at 2 n.3, Dkt. 9-1, and it raised timeliness again during the plaintiffs' administrative appeal of the final agency decision, Ex. 20 at 1, Dkt. 21-1. The Department did not engage in a "procedural run-around" to avoid adjudication on the merits. *Bowden*, 106 F.3d at 439. Thus, the Department did not waive the defense, and the plaintiffs' latter three discrete actions are dismissed as untimely.

### B.    Venue

Title VII's special venue provisions provide that "a plaintiff may bring suit: (1) where 'the unlawful employment practice is alleged to have been committed,' (2) where 'the employment records relevant to such practice are maintained and administered,' or (3) where

'the aggrieved person would have worked but for the alleged unlawful employment practice.'"
*Pendleton*, 552 F. Supp. 2d at 17 (quoting 42 U.S.C. § 2000e-5(f)(3)).  If the defendant "is not
found within any such district" then the "action may be brought within the judicial district in
which the [defendant] has his principal office," 42 U.S.C. § 2000e-5(f)(3).

 The primary venue dispute centers on the first provision.  The plaintiffs concede that the
Agency's headquarters moved from Washington D.C. to Maryland sometime before January 2021.
Compl. ¶ 7.  Thus, all allegedly discriminatory acts that occurred in 2021 took place in Maryland.
Despite this, the plaintiffs maintain that venue is appropriate in this district because a substantial
portion of the allegedly discriminatory acts occurred before 2021.  Opp'n at 12.

 The Court has dismissed as untimely alleged actions that occurred before December 18,
2020.  Accepting the plaintiffs' allegation that the Department moved to Maryland on December
31, 2020, Compl. ¶ 7, the only alleged discriminatory actions that occurred in the District of
Columbia took place between December 18 and December 31, 2020.  The plaintiffs allege that
they were discouraged from requesting compensatory time "from November 2018 to the present,"
denied requests for additional staffing until "approximately 2021," subject to scrutiny from the
Acting Branch Chief until "February 28, 2021," and were messaged an allegedly racist monkey
emoji on December 18, 2020.  Compl. ¶¶ 21, 24, 29, 36.  But most of the alleged discriminatory
actions occurred after December 31, 2020, when the Agency's headquarters was located in
Maryland.  Compl. ¶¶ 41, 44–49.  Thus, applying a "commonsense" approach, *Lamont*, 590 F.2d
at 1134, the Court concludes that the events with the most "operative significance," *id.*, occurred
in Maryland.  The District of Maryland is therefore the appropriate venue for the plaintiffs'
disparate impact claims under the first provision.

The plaintiffs also have not established[1] that venue is appropriate in the District of Columbia under Title VII's second provision.  Although all parties agree the employment records were maintained online, *see* Batchelor Declaration ¶¶ 2–3, Dkt. 9-2, it is unclear from the record where the servers are located.[2]  The plaintiffs therefore have not met their burden to establish venue in the District of Columbia under this prong.

Venue is likewise inappropriate in the District of Columbia under Title VII's third provision.  Although the plaintiffs allege they were discriminatorily denied the Acting Branch Chief role in October 2020—a job promotion that would have occurred in the District of Columbia—the Court has dismissed that claim as untimely so it cannot serve as a basis for establishing venue for the plaintiffs' disparate impact count.  The only other alleged non-selection occurred in 2021, after the Department had moved to Maryland.  Compl. ¶ 45.  The District of Maryland is the appropriate venue under the third provision.

### C.    Transfer

Having found venue in the District of Columbia to be improper for the plaintiffs' disparate impact claims, the Court must determine whether to dismiss those counts or transfer the case to a district where venue is proper for all counts.  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice,

---

[1] The plaintiffs incorrectly assert the defendant bears the burden of establishing transfer.  Opp'n at 10–11 (relying on *Taylor v. Shinseki*, 13 F. Supp. 3d 81, 88–90 (D.D.C. 2014)).  That principle applies when transferring between two different appropriate venues and is inapposite here, where the issue is whether venue in the District of Columbia is proper.

[2] The plaintiffs briefly mention the Reports of Investigation following their EEO complaints.  Compl. ¶¶ 9–10.  To the extent that they attempt to establish venue through those documents, that attempt is unavailing.  The act of "[u]sing employment records to process an administrative complaint is not 'maintaining and administering' the employment records for purposes of establishing venue under 42 U.S.C. § 2000e-5(f)(3)."  *Saran v. Harvey*, 2005 WL 1106347, at *3 (D.D.C. May 9, 2005).

transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "The decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). Yet "the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal." *Ellis-Smith v. Sec'y of Army*, 793 F. Supp. 2d 173, 177 (D.D.C. 2011). Further, "[i]t is in the interest of justice to transfer the entire complaint rather than have it heard in two different venues." *In re O'Leska*, 2000 WL 1946653, at *1 (D.C. Cir. Dec. 7, 2000).

Although the plaintiffs expressed concerns about transfer, they appear to agree that transfer rather than dismissal would be appropriate. Opp'n at 9. The Court finds it is in the interest of justice to transfer venue to the District of Maryland because most of the actionable discriminatory actions took place in Maryland and the plaintiffs confirmed their preference for transfer over dismissal.

## CONCLUSION

For the foregoing reasons, the Court grants in part the defendant's motion to dismiss and transfers the remaining claims to the District of Maryland. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

February 20, 2025